STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE

v.

KEVIN D. CLEVETTE,

Defendant



CRIMINAL ACTION
DOCKET NO. CR-03-403
SKS-KEN-3/11/2004

**DECISION ON MOTION**

DONALD L. GARBRECHT
LAW LIBRARY

APR 27 2004

This matter comes before the court on the defendant's motion to suppress certain physical and testimonial evidence obtained as the result of a search of the defendant's commercial motor vehicle. The evidence includes a marijuana pipe and its contents seized from the defendant's person, a coffee mug and contents seized from the cab of the vehicle, a jean jacket and contents also seized from the cab of the vehicle, and any admissions made by the defendant. The defendant claims that these objects and statements were obtained in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and/or Article I, § 5 of the Constitution of the State of Maine. Evidentiary hearings were conducted on December 4, 2003, and February 5, 2004. In addition to the testimonial and other evidence, the court has also considered the oral and written arguments of both parties. After full review, the motion to suppress will be denied.

### Facts

On July 18, 2003, at approximately 9:00 a.m., Maine State Trooper Michael Jillson was part of a team conducting a commercial vehicle checkpoint at the West Gardiner tollbooth. In addition to his trooper designation, Jillson was a member of the Commercial Vehicle Enforcement Unit of the State Police and, as such, was also a special agent of the Federal Motor Carrier Administration with authority delegated to

enforce federal motor vehicle carrier regulations, including the authority to stop motor vehicles without cause or warrant. The checkpoint was being operated to check for commercial vehicle safety issues on a completely random basis.

The morning of July 18, the defendant was driving his 18-wheel tractor-trailer truck up the Interstate while engaging in interstate deliveries. Trooper Jillson motioned the defendant to the side of the road, and the defendant complied. When the trooper got to the truck cab and the defendant rolled down his window, the defendant appeared to the trooper to be nervous and shaky or trembling. The defendant's eyelids looked very heavy and he looked as if he were very tired. As the two men talked, the defendant's end of the discussion was very slow and he rocked in his seat as he spoke. The trooper developed the thought that the defendant was either very tired or he was under the influence of some stimulant drugs. The trooper then asked to look at the driver's logbook, which appeared as if he were trying to average his time -- a violation.

The trooper became worried that the defendant was overly tired and concealing his hours in the logbook or that he had been abusing a legal stimulant. As a result, the trooper asked the defendant if the trooper could search his truck. There is disagreement as to whether the officer asked permission to search the cab of the truck and the defendant gave his consent, or whether the officer simply ordered the defendant out of the truck. In any event, the defendant did dismount. Concerned by the defendant's peculiar behavior and since no other troopers were immediately in the vicinity, Trooper Jillson told the defendant he was going to pat him down for possible weapons. During the pat down, the trooper found a large bulge with a cylindrical shape in the defendant's right rear pocket. Unable to rule out the possibility of a potential weapon, the trooper asked the defendant what the object was. In response, the defendant hesitated for at least five seconds, making the trooper nervous. The trooper

then ordered the defendant to empty his pockets and the defendant pulled out a marijuana pipe. The trooper advised the defendant that it was a violation for him to have a pot pipe in the truck and informed him that he was then going to search the cab of the truck.

Trooper Jillson began his search by looking for documentation related to the operation of the truck, such as receipts and other paperwork. In doing so, the trooper checked the glove box where he found paperwork relating to a drug trafficking case pending in the Houlton Superior Court. The trooper testified that at that point he was not exactly certain what he had in light of the paperwork relevant to the drug trafficking case coupled with the marijuana pipe and the continuing concern that he defendant was a tired trucker.

Trooper Jones joined Trooper Jillson to search the driver's compartment and sleeper berth. In doing so, Jones lifted the bunk and found a mug behind the passenger seat containing some small packets and paper currency. The trooper also dismantled the mug and found more small packets hidden inside. Suspecting that they had found drugs, the search was suspended until more help could arrive.

At approximately 10:00 a.m. Special Agent Blair of the Maine Drug Enforcement Administration responded to a call to assist at the checkpoint. The agent inspected the one and a half inch by one and a half inch Ziploc bags with a ratman logo, which are often used for packaging drugs Agent Blair then took the defendant to a cruiser where the defendant agreed to talk and had his "Miranda" rights read to him from a card. During the questioning, the defendant admitted his last use of marijuana the night before, but continuously denied that any other drugs found were his. The defendant took the position that any drugs must have belonged to a previous driver. Trooper Jillson informed Agent Blair that they had conducted only a cursory search at first prior

to finding the mug with the contraband inside. The Special Agent then decided to search further because drugs such as crystal meth are easy to conceal. Additional bags like those in the coffee mug were found in a denim jacket hanging from a hook behind the passenger seat. No other clothing was found in the vehicle.

## Discussion

At the close of the evidence, the defendant argued that the trooper's pat down search, which resulted in finding the marijuana pipe, was not justified and that the trooper had neither probable cause nor the defendant's consent to further search the cab of the truck. The State took the position that the defendant consented to the search of the truck or, in the alternative, that there was probable cause under the "automobile search exception" with probable cause based upon the defendant's jittery, fatigued appearance and questionable logbook practices. As a third alternative, the State argues that the search of the truck cab was a valid administrative search which requires no probable cause or warrant.

As a preliminary matter, the defendant argues that the only source for probable cause to search the cab of his truck would have come from the discovery of the marijuana pipe during the pat down search by the trooper. The defendant also argues that there was no basis for such pat down which would pass constitutional scrutiny. On the contrary, the court finds that given the totality of the circumstances including the absence of any other law enforcement officers and the defendant's nervous behavior, the trooper had the right to conduct a minimally intrusive pat down for weapons to insure officer safety. However, this point becomes moot in light of the court's agreement with the State that this was a valid administrative search requiring no warrant or probable cause.

In the interim between the two hearings, the First Circuit of Appeals issued its decision in *United States v. Maldonado*, 356 F.3d 130 (1st Cir. Ct. App. 2004). In *Maldonado*, the Fist Circuit extended to interstate commercial trucking the administrative search criteria applied by the Supreme Court to auto junkyards in *New York v. Berger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The *Maldonado* court first found "... that interstate commercial trucking is a pervasively regulated industry capable of supporting recourse to the administrative search exception" to the Fourth Amendment warrant requirement. The court then applied the three-part *Berger* test finding: (1) "that the government has a significant interest in regulating the interstate trucking industry;" (2) "that warrantless inspections of commercial trucks are necessary to further the regulatory scheme;" and (3) "the carefully delineated scope of the federal regulations suitably cabins the discretion of the enforcing officer. Moreover, the regulations themselves give ample notice to interstate truckers that inspections will be made on a regular basis." Having found all three prongs of the *Berger* test to have been met, the court concluded that an administrative search without warrant of a commercial truck did not violate the Fourth Amendment.

Turning to the present case, the court sees no reason why the holding in *Maldonado* should not control here. Trooper Jillson is a sworn Maine law enforcement officer with arrest powers, but he was also acting as a special agent of the federal agency for purposes of enforcing the federal motor vehicle carrier regulations. There is no indication that the Maine constitutional search provisions would be any more stringent under these circumstances than the provisions of the federal Constitution or that the State Constitution would even apply in a situation involving enforcement of federal laws and regulations by a federal officer.

The defendant here, like the defendant in *Maldonado,* seeks to have the court apply the exemptions set forth in *Whren v. United States,* 517 U.S. 806 (1996). Basically, the *Whren* holding is that a search conducted under regulatory scheme that satisfies *Berger* would still be subject to Fourth Amendment limits if the search is not conducted for administrative purposes, e.g., a pretext for a search for violations of criminal law. Turning to the facts, it is clear that the entire purpose for the checkpoint was to conduct regulatory inspections and searches of commercial motor vehicles for the purpose of enforcement of the federal regulations. Among those regulations are specific prohibitions against drivers who drive too long or under the influence of alcohol, illegal drugs or stimulants. It was these concerns which led Trooper Jillson to decide to search the cab compartment of the defendant's truck after noting the defendant's behavior and the discovery of the marijuana pipe. The mere fact that a violation of the motor carrier regulations may also be a violation of criminal law does not affect the *Berger/Maldonado* search exception. "Nor [did the *Berger* court] think that this administrative scheme is unconstitutional simply because, in the course of enforcing it, an inspecting officer may discover evidence of crimes, besides violations of the scheme itself." *Berger,* at 107 S.Ct. 2651. Further, "the discovery of evidence of crimes in the course of an otherwise proper investigative inspection does not render that such illegal or the administrative scheme suspect." *Id.* at 2651. These statements from the *Berger* decision were not overturned by *Whren.*

Since the defendant concedes he was given him *Miranda* rights, and his statements were not tainted by the earlier search, there is also no basis for suppressing his statements.

For the reasons stated above, the entry will be:

Motion to suppress is DENIED.

Dated: March _10_, 2004

_____
S. Kirk Studstrup
Justice, Superior Court

SUPERIOR COURT
KENNEBEC, ss.
Docket No AUGSC-CR-2003-00403

**DOCKET RECORD**

DOB: 02/16/1966
Attorney: KIRK GRIFFIN
        LAW OFFICE OF KIRK Y. GRIFFIN
        50 STANIFORD STREET
        PO BOX 8190
        BOSTON MA 02114
        RETAINED 09/12/2003

State's Attorney: LARA NOMANI

Filing Document: INDICTMENT
Filing Date: 09/12/2003

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   UNLAWFUL POSSESSION OF SCHEDULED DRUG        07/18/2003 WEST GARDINER
    17-A   1107-A(1)(B)(3)        Class C
    BLAIR                    / MDE

## Docket Events:

09/12/2003 FILING DOCUMENT -  INDICTMENT FILED ON 09/12/2003

        TRANSFER -  BAIL AND PLEADING GRANTED ON 09/12/2003

        TRANSFER -  BAIL AND PLEADING REQUESTED ON 09/12/2003

09/16/2003 Charge(s): 1
        HEARING -  ARRAIGNMENT SCHEDULED FOR 09/26/2003 @ 1:00

09/16/2003 NOTE -  OTHER CASE NOTE ENTERED ON 09/15/2003

        DEFENDANT REPRESENTED BY KIRK GRIFFIN, ESQ.
                50 STANIFORD STREET
        BOSTON, MA  02114  (617) 367-0966
09/29/2003 Charge(s): 1
        HEARING -  ARRAIGNMENT HELD ON 09/26/2003
        S KIRK STUDSTRUP , JUSTICE
        Attorney: KIRK GRIFFIN
        DA: LARA NOMANI        Reporter: CASE ENOCH
        Defendant Present in Court

        READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
        DEFENDANT.  21 DAYS TO FILE MOTIONS
09/29/2003 Charge(s): 1
        PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 09/26/2003

09/29/2003 Charge(s): 1
        PLEA -  NOT GUILTY ACCEPTED BY COURT ON 09/26/2003

09/29/2003 BAIL BOND -  SURETY BAIL BOND CONTINUED AS POSTED ON 09/26/2003

Printed on: 03/11/2004

09/30/2003 BAIL BOND - $48,000.00 SURETY BAIL BOND FILED ON 09/30/2003

      Bail Amt: $48,000      Surety Type: BAIL LIEN      Surety Value: $0
      County: AROOSTOOK      County Book ID: 3876 Book Page: 10
      Date Bailed: 09/26/2003      Prvdr Name: KEVIN  CLEVETTE
      Lien Issued: 09/29/2003      Rtrn Name: KEVIN  CLEVETTE
      Lien Discharged:

### Conditions of Bail:
10/07/2003 TRANSFER -  BAIL AND PLEADING RECVD BY COURT ON 10/07/2003

      RECEIVED FROM AUGDC CR03-1787.
10/07/2003 BAIL BOND - $4,000.00 CASH BAIL BOND FILED ON 10/07/2003

      Bail Receipt Type: CR
      Bail Amt: $4,000

                      Receipt Type: CK
      Date Bailed: 07/21/2003      Prvdr Name: KRISTINE  MICHAUD
                      Rtrn Name: KRISTINE  MICHAUD

### Conditions of Bail:
BAIL DISBURSEMENT ON 10/07/2003
Check No. 5530   Check Amount: 4,000.00
Paid To: KRISTINE  MICHAUD
FORWARDED TO BAIL PROVIDER

10/07/2003 BAIL BOND -  CASH BAIL BOND DISBURSEMENT ON 10/07/2003

      Date Bailed: 07/21/2003
      BAIL DISBURSEMENT ON 10/07/2003
      Check No. 5530   Check Amount: 4,000.00
      Paid To: KRISTINE  MICHAUD
      FORWARDED TO BAIL PROVIDER

10/17/2003 MOTION -  MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ON 10/17/2003

10/17/2003 MOTION -  MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 10/17/2003

      AFFIDAVIT OF KEVIN D. CLEVETTE IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESSPHYSICAL AND
      TESTIMONIAL EVIDENCE FILED.
10/17/2003 HEARING -  MOTION TO SUPPRESS EVIDENCE SCHEDULED FOR 12/04/2003 @ 9:00
      S KIRK STUDSTRUP , JUSTICE
      NOTICE  TO PARTIES/COUNSEL
10/17/2003 HEARING -  MOTION TO SUPPRESS STATEMENT SCHEDULED FOR 12/04/2003 @ 9:00
      S KIRK STUDSTRUP , JUSTICE
      NOTICE  TO PARTIES/COUNSEL
12/05/2003 HEARING -  MOTION TO SUPPRESS STATEMENT HELD ON 12/04/2003
      S KIRK STUDSTRUP , JUSTICE
      Attorney: KIRK GRIFFIN
      DA: LARA NOMANI      Reporter: PHILIP GALUCKI
      Defendant Present in Court

      Printed on: 03/11/2004

STATE WITNESSES: MICHAEL JILLSON AND JAMES JONES; HEARING WAS NOT CONCLUDEDNEEDS 3 MORE HOURS

12/05/2003 HEARING -  MOTION TO SUPPRESS STATEMENT CONTINUED ON 12/04/2003

NEEDS 3 MORE HOURS TO CONCLUDE THE HEARING

12/05/2003 HEARING -  MOTION TO SUPPRESS EVIDENCE HELD ON 12/04/2003
S KIRK STUDSTRUP , JUSTICE
Attorney:  KIRK GRIFFIN
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court

STATE WITNESSES: MICHAEL JILLSON AND JAMES JONES; HEARING NOT CONCLUDED NEEDS 3 MORE HOURS

12/05/2003 HEARING -  MOTION TO SUPPRESS EVIDENCE CONTINUED ON 12/04/2003

01/09/2004 OTHER FILING -  TRANSCRIPT FILED ON 01/08/2004

Reporter: PHILIP GALUCKI
TRANSCRIPT OF THE MOTION TO SUPPRESS STARTED ON DECEMBER 4, 2003 BEFORE     JUSTICE STUDSTRUP.

02/05/2004 HEARING -  MOTION TO SUPPRESS EVIDENCE HELD ON 02/05/2004 @ 11:00
S KIRK STUDSTRUP , JUSTICE
Attorney:  KIRK GRIFFIN
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court

STATE WITNESSES: STACY BLAIR; DEFENSE WITNESSES KEVIN CLEVETTE

02/05/2004 HEARING -  MOTION TO SUPPRESS STATEMENT HELD ON 02/05/2004 @ 11:00
S KIRK STUDSTRUP , JUSTICE
Attorney:  KIRK GRIFFIN
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court

STATE WITNESSES STACY BLAIR; DEFENSE WITNESSES: KEVIN CLEVETTE

02/05/2004 MOTION -  MOTION TO SUPPRESS STATEMENT UNDER ADVISEMENT ON 02/05/2004
S KIRK STUDSTRUP , JUSTICE

02/05/2004 MOTION -  MOTION TO SUPPRESS EVIDENCE UNDER ADVISEMENT ON 02/05/2004
S KIRK STUDSTRUP , JUSTICE

02/05/2004 CASE STATUS -  DECISION UNDER ADVISEMENT ON 02/05/2004
S KIRK STUDSTRUP , JUSTICE

02/20/2004 OTHER FILING -  MEMORANDUM OF LAW FILED ON 02/20/2004

BY KIRK Y. GRIFFIN, ESQ.

03/04/2004 OTHER FILING -  MEMORANDUM OF LAW FILED ON 03/03/2004

DA:  LARA NOMANI

03/11/2004 ORDER -  COURT ORDER FILED ON 03/10/2004

DECISION ON MOTION TO SUPPRESS

03/11/2004 MOTION -  MOTION TO SUPPRESS STATEMENT DENIED ON 03/10/2004
S KIRK STUDSTRUP , JUSTICE
COPY TO PARTIES/COUNSEL

03/11/2004 MOTION -  MOTION TO SUPPRESS EVIDENCE DENIED ON 03/10/2004
S KIRK STUDSTRUP , JUSTICE

COPY TO PARTIES/COUNSEL

## Exhibits

12/04/2003   STATE#1, Exhibit#1, CERTIFIED REGULATIONS FROM SECRETARY OF STATE, Adm w/o obj on
             12/04/2003.

12/04/2003   STATE#1, Exhibit#2, PHOTOCOPY OF MONEY, DRUGS IN BAGGIES AND COFFEE MUG, Adm w/o
             obj on 12/04/2003.

12/04/2003   STATE#1, Exhibit#3, SUMMONS FOR RULE VIOLATION, CMV DRIVER IN POSSESSION OF DRUGS,
             Adm w/o obj on 12/04/2003.

12/04/2003   DEFENDANT#1, Exhibit#1, DRIVER'S DAILY LOG, Adm w/o obj on 12/04/2003.

12/04/2003   DEFENDANT#1, Exhibit#2, DRIVER/VEHICHLE INSPECTION REPORT, Adm w/o obj on
             12/04/2003.

A TRUE COPY

ATTEST:   _____

                    Clerk